IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TIMOTHY MICHAEL ALMOND, and | ) | Case No. B-06-50324C-7W |
| RITA G. ALMOND | ) | |
| | ) | |
| | ) | |
| Debtors. | ) | |

| | | |
|---|---|---|
| | ) | |
| TIMOTHY MICHAEL ALMOND, and | ) | |
| RITA G. ALMOND | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | ADVERSARY PROCEEDING |
| | ) | NO: 06-6089W |
| v. | ) | |
| | ) | |
| FORD MOTOR CREDIT COMPANY, and | ) | |
| CAROLINA INVESTIGATIONS AND | ) | |
| RECOVERY, INC. | ) | |
| | ) | |
| Defendants. | ) | Chapter 7 |

**MEMORANDUM OPINION**

THIS MATTER came before the Court for hearing, upon proper notice, on November 29, 2006 upon Ford Motor Credit Company's Motion to Dismiss Adversary Proceeding and Alternative Motion to Compel Arbitration (the "Motion to Dismiss"). Martha R. Sacrinty appeared on behalf of Ford Motor Credit Company ("Ford"), and Thomas C. Flippin appeared on behalf of the above-referenced debtors (the "Debtors"), who are the plaintiffs in this adversary proceeding.

This adversary proceeding was brought by the Debtors to recover damages and to obtain injunctive relief based upon alleged violations of the Section 524(a) discharge injunction by Ford and by Carolina Investigations and Recovery, Inc. ("Carolina Recovery")(collectively the "Defendants").  The Debtors also seek to recover for breach of contract and for various violations of the "North Carolina Debt Collection Act" codified in Chapter 75 of the North Carolina General Statutes.  See N.C. GEN. STAT. ANN. §§ 75-50 – 75-57 (West 2005).  Ford's Motion to dismiss this adversary proceeding is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## I.  FACTS

On May 1, 2004, the Debtors executed a contract (the "Contract") to buy a 2001 Lincoln LS (the "Vehicle").  The Contract was eventually assigned to Ford.  On March 15, 2006, the Debtors filed their petition for relief under Chapter 7 of the Bankruptcy Code.[2]  On June 29, 2006, an Order discharging the Debtors was entered.  On July 12, 2006, the Debtors' bankruptcy was closed.[3]  The Debtors complain about certain actions of the Defendants after the Debtors received their discharge.  On September 21, 2006, an order was entered that reopened the Debtors' bankruptcy case to allow them to file this adversary proceeding.

The pertinent factual allegations in the Debtors' complaint are as follows:

---

[1] Fed. R. Civ. P. 12(b) - (h) is made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b).

[2] The Debtors filed a statement of intention, as required by Section 521(a)(2)(A), indicating that they intended to retain the Vehicle and make regular payments.  The Debtors did not surrender, redeem, or reaffirm the Vehicle.

[3] At the time that the bankruptcy case was closed, a payment default to Ford existed.  The Debtors brought the debt current by July 31, 2006.

1.  The Debtors were offered but never signed a reaffirmation agreement on any of their vehicles. (Comp. ¶ 15).

2.  Ford was a creditor listed on the Debtors' bankruptcy petition. (Comp. ¶ 16).

3.  Ford was properly served by the Debtors in their bankruptcy case and received actual notice of the bankruptcy as evidenced by a letter from Ford suggesting that the Debtors execute a reaffirmation agreement. (Comp. ¶ 17).

4.  Ford is secured by the Vehicle. (Comp. ¶ 18).

5.  After the Debtors' bankruptcy was closed, Ford retained Carolina Recovery to repossess the Vehicle. (Comp. ¶ 19).

6.  The Debtors are current on their monthly payments to Ford. (Comp. ¶ 20).

7.  Post-petition, the Defendants telephoned the Debtors on numerous occasions, and on at least one occasion an agent of Carolina Recovery stated, "If you don't give us the car we will have you arrested." (Comp. ¶ 21).

8.  Post-petition, Carolina Recovery had come onto the Debtors' premises on at least three occasions demanding the Vehicle. (Comp. ¶ 22).

9.  The Debtors were told by both Defendants that they were attempting to repossess the Vehicle because the Debtors' filed a bankruptcy petition and chose not to reaffirm the debt secured by the Vehicle, even though the payments were current. (Comp. ¶ 23).

10.  The Debtors have been forced to keep the Vehicle locked in their garage since August 7, 2006 out of fear that Carolina Recovery will, in violation of the Contract, take the Vehicle. (Comp. ¶ 24).

11.  The Defendants continued to call the Debtors after the Debtors' counsel called Ford on their behalf. (Comp. ¶ 25).

12.  The Debtors have been damaged by the actions of the Defendants in that they have been and continue to be forced to expend their time and money toward the resolution of the false accusation by Ford that the Debtors are in default and the implication that the Vehicle will be repossessed.  The Debtors have worried about this situation and have been emotionally distressed by the conduct of the Defendants.  The Debtors have suffered actual damages.  The Debtors allege that they have been harassed by the actions of the Defendants and have feared losing the Vehicle. (Comp. ¶ 26).

For the purpose of considering Ford's Motion to Dismiss, the Court must review these allegations[4] to determine if they state a claim for relief that may be granted.

## II. JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A) & (O), and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b), which this Court may hear and determine.

---

[4] Five days prior to the hearing on this matter, the Debtors filed affidavits that contain further factual allegations. These affidavits will not be considered by the Court in deciding this matter. "In deciding a Rule 12(b)(6) motion, the court will consider the facts stated in the complaint and the documents attached to the complaint. The court may also consider documents referred to in the complaint and relied upon by plaintiff in bringing the action." Abadian v. Lee, 117 F. Supp. 2d 481, 485 (D. Md. 2000)(citing Biospherics, Inc. v. Forbes, Inc., 989 F. Supp. 748, 749 (D. Md. 1997), aff'd, 151 F.3d 180 (4th Cir. 1998)(citing Cortec Indust., Inc. v. Sum Holding, L.P., 949 F.2d 42, 46-48 (2d Cir. 1991)); see also Davis v. Huggins, 896 F. Supp. 561, 566 (E.D. Va. 1995)(In the context of a motion to dismiss for failure to state a claim upon which relief can be granted "[t]he court can only rely upon the allegations in the complaint and those documents attached as exhibits or incorporated by reference.")(citing Simons v. Montgomery County Police Officers, 762 F.2d 30, 31 (4th Cir. 1985), cert. denied, 474 U.S. 1054 (1986)); Gasner v. County of Dinwiddie, 162 F.R.D. 280, 281-82 (E.D. Va. 1995)("A Rule 12(b)(6) motion to dismiss for failure to state a claim does not permit the Court to look outside the complaint . . . [and] the Rules require that if the court does consider 'matters outside the complaint' it must convert the motion into a motion for summary judgment, affording the parties a 'reasonable opportunity to present all material made pertinent to such a motion.'"(citing Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir. 1993)(citations omitted); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); Ocean Breeze Festival Park, Inc. v. Reich, 853 F. Supp. 906, 911 (E.D. Va. 1994); Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1471 (4th Cir. 1991)); Bennett v. Smith (In re Smith), No. 05-10041, 2006 WL 3333801, at *7-8 (Bankr. M.D.N.C. Nov. 16, 2006). When plaintiffs and defendants present extraneous matters, a "Court can and [this Court] will exercise its discretion to exclude them from consideration and decide [the] motion as a motion to dismiss." HQM, Ltd. v. Hatfield, 71 F. Supp. 2d 500, 502 (D. Md. 1999)(brackets added). The affidavits filed by the Debtors were not attached to or referenced in the Debtors' complaint, nor were they relied upon in filing this adversary proceeding.

III. ANALYSIS

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them.  Franklin v. Gwinnett County Public Schools, 911 F.2d 617, 619 (11th Cir. 1990) rev'd on other grounds by Franklin v. Gwinnett County Public Schools, 503 U.S. 60 (1992)(facts of the complaint must be accepted as true and the allegations are to be favorably construed to the pleader).  A court may dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see In re Servico, 144 B.R. 557 (Bankr. S.D. Fla. 1992)(no complaint should be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief).  "As a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted by the district court only in the relatively unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to securing relief."  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004); Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974); First Financial Sav. Bank, Inc. v. American Bankers Ins. Co. of Florida, Inc., 699 F. Supp. 1158, 1161 (E.D.N.C. 1988).  The plaintiff's allegations are to be construed "liberally, because the rules require only general or 'notice' pleading, rather than detailed fact pleading."  2 James Wm. Moore et al., Moore's Federal Practice ¶12.34[1][b] (3d ed. 2006).

A. What is the Appropriate Remedy for a Violation of the Discharge Injunction?

Ford argues that the Debtors' first claim for relief should be dismissed because the Debtors failed to allege sufficient facts to find that Ford is in contempt for violating the Discharge Order. Ford argues that there is no private right of action for a violation of the discharge injunction. Rather, a contempt action is the only remedy for such action. The Court agrees.

In In re Barbour, 77 B.R. 530 (Bankr. E.D.N.C. 1987), Judge Small wrote:

> Courts are divided on the bankruptcy court's authority to find a person in contempt for violation of the bankruptcy court's orders. . . . Notwithstanding the lack of specific statutory authority in § 524, the bankruptcy court has the authority as a unit of the district court (28 U.S.C. § 151) to which all bankruptcy cases have been referred (28 U.S.C. § 157(a); General Order of Reference dated August 3, 1984) to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions' of the Bankruptcy Code. 11 U.S.C. § 105(a). This necessarily includes orders imposing sanctions for violating the discharge injunction. . . . The court is of the opinion that it has the authority to impose sanctions for the violation of the discharge injunction.

Id. at 532 (internal citations omitted). Barbour holds that a bankruptcy court has the authority to find persons in contempt of the bankruptcy court's orders, but it does not go so far as to hold that there is a private right of action for a violation of the discharge injunction.

The issue was considered in Thomas v. Resolution Trust Corp. (In re Thomas), 184 B.R. 237 (Bankr. M.D.N.C. 1995). In Thomas, Judge Stocks noted that "[b]ankruptcy courts have frequently sanctioned creditors for willfully violating the discharge injunction." Id. at 240. The Thomas court noted that, although in some cases "the court has simply found that the debtor is entitled to compensation[,] . . . [t]he more common approach . . . has been to find the party in contempt based on the bankruptcy court's authority under 11 U.S.C. § 105." Id. at 240-41

(internal citations omitted). Applying the more common approach, Judge Stocks concluded that "[i]n order to be found in civil contempt, the offending party must have knowingly and willfully violated a definite and specific court order." Id. (citing In re Ryan, 100 B.R. 411, 417 (Bankr. N.D. Ill. 1989)).

The issue was again considered in In re Bruce, No. 00-50556 C-7, 2000 WL 33673773 (Bankr. M.D.N.C. Nov. 7, 2000). In Bruce, Judge Carruthers stated that "[a]lthough section 524 does not explicitly authorize monetary damages for violation of a discharge injunction, the court may award actual damages pursuant to the statutory contempt powers set forth in 11 U.S.C. § 105." Id. (citing In re Hardy, 97 F.3d 1384 (11th Cir. 1996); In re Thomas, 184 B.R. 237). Several other courts in the Fourth Circuit have addressed the issue and held that a contempt action is proper. See In re Bock, 297 B.R. 22, 29 (Bankr. W.D.N.C. 2002)(citing In re Cherry, 247 B.R. 176 (Bankr. E.D. Va. 2000))("[D]ischarge is a Bankruptcy Court order, and as such, most courts treat its violation as civil contempt."); In re Evans, 289 B.R. 813 (Bankr. E.D. Va. 2002)(addressing a potential violation of the discharge injunction in a contempt proceeding); In re Cherry, 247 B.R. 176 ("11 U.S.C. § 105(a) authorizes a bankruptcy court to hold a party in civil contempt for failing to comply with a previous order. The discharge injunction put in place pursuant to 11 U.S.C. § 524(a) is an order of the Bankruptcy Court whose violation is punishable by the imposition of civil sanctions."); In re Mickens, 229 B.R. 114, 118 (Bankr. W.D. Va. 1999)("Violation of the injunction is punishable by contempt . . . . It has long been recognized and it is elementary that a willful and knowing violation of a valid order of a Court which has jurisdiction of the subject matter is civil contempt.")(internal quotations and citations omitted). Thus, in order to overcome Ford's Motion to Dismiss, the Debtors' complaint must allege

sufficient facts for the Court to conclude that the Defendants were in civil contempt of this Court's June 29, 2006 discharge order.

B.  Does the Uncertainty Surrounding the Continued Viability of the "Ride Through" Prevent the Court From Finding Ford in Contempt?

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"), debtors in a bankruptcy proceeding in the Fourth Circuit had the benefit of what was known as the "ride-through" or the "fourth option."[5]  See In re Donald, 343 B.R. 524 (Bankr. E.D.N.C. 2006).  What that meant, essentially, was that a debtor would be able to keep his or her vehicle, both during and after his or her bankruptcy proceeding, so long as the debtor was current on the payments to the secured creditor. Id. at 530-31.  This option was available to a debtor even if the contract obligating the debtor to make those payments had an ipso facto clause, that is, a clause providing that the debtor would be in default under the contract if the debtor simply filed for bankruptcy protection.  Id. at 531.  Prior to the enactment of BAPCPA, the attempted repossession of collateral securing an obligation for which a debtor was current would have clearly been a violation of a debtor's rights under the Bankruptcy Code.  See In re Belanger, 962 F.2d 345, 347-48 (4th Cir. 1992)(court recognized the availability of the "ride through").  However, BAPCPA injected some uncertainty into the continued viability of the "ride through."   See In re Donald, 343 B.R. 524; In re Anderson, 348 B.R. 652 (Bankr. D. Del. 2006); In re Steinhaus, 349 B.R. 694 (Bankr. D. Idaho 2006).  After the enactment of BAPCPA it was, at the very least, uncertain if the "ride through" remained an

---

[5]Pre-BAPCPA, Section 521 gave an individual debtor the option of redeeming, reaffirming, or surrendering property securing a consumer debt. 11 U.S.C. § 521.  Keeping the collateral without taking one of these first three options was called the "fourth option."

option. Cf. In re Norton, 347 B.R. 291, 298-99 (Bankr. E.D. Tenn. 2006)("[B]ased upon the statutory language of § 521(a)(6), BAPCPA extinguished the 'ride-through' option[.]") with In re Donald, 343 B.R. at 534 ("Termination of the stay, however, does not mean that the 'ride-through' option is eliminated . . . [because] [t]he Fourth Circuit Court of Appeals has held that 'a default-on-filing clause in an installment loan contract was unenforceable as a matter of law.'")(quoting Belanger, 962 F.2d at 348). The question to be answered then, is whether uncertainty about the state of the relevant law in July of 2006 could prevent a finding, based on the facts alleged in the Debtors' complaint, that the Defendants were in contempt of court. In order to answer that question, the Court must examine the role that state of mind plays in the context of a motion for contempt.[6]

"The purpose of contempt proceedings is to uphold the power of the court, and also to secure to suitors therein the rights by it awarded." Penfield Co. of Cal. v. Securities and Exchange Commission, 330 U.S. 585, 594 (1947)(quoting Bessette v. W.B. Conkey Co., 194 U.S. 324, 327 (1947). Further, "[c]ivil contempt is designed to force the contemnor to comply with an order of the court." Willy v. Coastal Corp., 503 U.S. 131, 139 (1992)(internal citation omitted).

---

[6] In its brief, Ford cites Ashcroft v. Conoco, Inc., 218 F.3d 288 (4th Cir. 2001), as setting forth the relevant standard for analyzing a contempt motion. In Ashcroft, the Fourth Circuit set forth four elements that must be shown in order to establish civil contempt: "(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's 'favor'; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result." Id. at 301 (citing Colonial Williamsburg Found. v. The Kittenger Co., 792 F. Supp. 1397, 1405-06 (E.D. Va. 1992), aff'd, 38 F.3d 133, 136 (4th Cir. 1994)). Ford argues that, even if the Debtors' allegations are true, they cannot prove any set of facts upon which the Court could find that the third element exists and that Ford's conduct "violated the terms of the [discharge order]" or that Ford "had knowledge . . . of such violations." Ashcroft, 218 F.3d at 301 (brackets added). While the Court does not disagree with the rule set forth in Ashcroft, in this particular context, as explained below, a slightly different standard has arisen.

"Bankruptcy courts have both an inherent, and as set forth in § 105(a), the statutory power to hold parties in contempt." In re Perviz, 302 B.R. 357, 370 (Bankr. N.D. Ohio 2003); see also In re Hardy, 97 F.3d at 1389 ("Section 105 creates a statutory contempt power, distinct from the court's inherent contempt powers in bankruptcy proceedings . . . .").

In analyzing this question, it is instructive to note the words of the Supreme Court concerning the significance of a person's mens rea in the context of civil contempt. In McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949), the Court stated rather simply that "[s]ince the purpose [of civil contempt] is remedial, it matters not with what intent the defendant did the prohibited act." In In re Swanson, 207 B.R. 76, 80 (Bankr. D.N.J. 1997), the court considered the question of civil contempt as it applied to the debtor's refusal to vacate property as ordered by the court. The court stated:

> A party seeking to recover damages for contempt must prove by clear and convincing evidence that an order of the court was in effect and that the alleged contemnor knew of and failed to comply with the order. Because civil contempt serves a remedial purpose, proof of willfulness is not necessary to [the] imposition of such a sanction.

Id. (internal citations omitted).

While acknowledging the general rule eschewing any requirement that willfulness be proved in a contempt proceeding, the Court cannot ignore that most courts that consider the issue in the context of an alleged violation of the discharge injunction generally make some inquiry into willfulness.[7]  Therefore, the Court holds that a creditor may be held in contempt pursuant to

---

[7]See generally David M. Holliday, Willful Violation of Discharge Injunction Provisions of Bankruptcy Code § 524(a)(2) and (3) (11 U.S.C. § 524(a)(2) and (3)), 9 A.L.R. FED. 2d 431 (2006); see, e.g., In re Hardy, 97 F.3d at 1390 (holding that a creditor may only be found to be in contempt under Section 105 for a willful violation of the discharge injunction); In re Contreras, No. 06-2024, 2007 WL 273128, at *1 (Bankr. S.D. Tex. Jan. 26, 2007)("If a creditor's violation of the discharge

10

Section 105 for a willful violation of the discharge injunction.  But what does "willful" mean in the context of a motion for contempt for a violation of the discharge injunction?

The Eleventh Circuit, in In re Hardy, 97 F.3d 1384 (11th Cir. 1996), set forth the following test for determining willfulness and, as a consequence, whether a defendant should be found to be in contempt for a violation of the discharge injunction pursuant to Section 105: a defendant may be held "in contempt if it: (1) knew that the [discharge injunction] was invoked and (2) intended the actions which violated the [injunction]." Id. at 1390 (citations and quotations omitted)(brackets added).  The rule in Hardy is the same rule that this Court would apply in the context of a willful violation of the automatic stay imposed by Section 362(a).  Id.

No clear rule has emerged in the Fourth Circuit on this question, but the rule in Hardy has been widely accepted.  See In re Hill, 222 B.R. 119, 122 (Bankr. N.D. Ohio 1998)(finding it to be consistent with Hardy "and most other cases that have addressed the issue," to analyze alleged violations of the discharge injunction in terms of willfulness and noting that "the cases are nearly

---

injunction is willful, the creditor may be liable for contempt under 11 U.S.C. § 105.")(citation omitted); In re Manzanares, 345 B.R. 773, 790 (Bankr. S.D. Fla. 2006)("Under § 105, a creditor may be liable for contempt if it 'willfully' violated the discharge injunction."(citing In re Hardy, 97 F.3d at 1390)); In re Ferguson, No. 6:96-bk-03065-ABB, 2006 WL 4108576, at *6 (Bankr. M.D. Fla. September 21, 2006)("A creditor may be held liable for contempt pursuant to § 105(a) for willfully violating the permanent injunction of § 524.")(citation omitted); In re Mooney, 340 B.R. 351, 360 (Bankr. E.D. Tex. 2006)(court noted that "[b]ankruptcy courts possess the authority to impose civil sanctions for a party's willful violation of the discharge injunction . . . ."); Mariner Health Group, Inc. v. Mariner Health Care, Inc. (In re Mariner Post-Acute Network), 329 B.R. 481, 486-87 (Bankr. D. Del. 2005)(court makes inquiry into willfulness); In re Feldmeier, 335 B.R. 807 (Bankr. D. Or. 2005)(finding creditor willfully violated discharge injunction); In re Perviz, 302 B.R. at 370 ("When a violation of the discharge injunction of § 524 is at issue, a finding of contempt is appropriate when, under the identical standard as set forth in § 362(h), the creditor's actions are found to be willful."); In re Pincombe, 256 B.R. 774, 782 (Bankr. N.D. Ill. 2000)("A willful violation of the post-discharge injunction . . . is punishable by contempt sanctions.")(citation omitted); In re Poole, 242 B.R. 104, 110 (Bankr. N.D. Ga. 1999)(creditor may be liable for contempt for willful violation of discharge injunction)(citation omitted).

11

uniform in finding a violation willful where . . . the creditor knew of the debtor's bankruptcy discharge and the action constituting violation of that discharge was done intentionally"). Further, at least one court in the Fourth Circuit has adopted that rule. See In re Cherry, 247 B.R. at 187. In Cherry, Judge St. John stated that he "agrees with the holding in Hardy that the standard used for determining whether a stay violation was willful pursuant to § 362 may be used to determine whether a violation of the discharge [injunction] was willful." Id. The Cherry court went on to note that the Fourth Circuit has applied this test for willfulness in the Section 362 context. Specifically, the Fourth Circuit has held that "to constitute a willful act, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay." Citizens Bank v. Strumpf (In re Strumph), 37 F.3d 155, 159 (4th Cir. 1994), rev'd on other grounds, 516 U.S. 16 (1995) (citations omitted). This Court finds the analysis in Cherry persuasive and adopts the Hardy rule. Therefore, the Defendants' beliefs about the continued viability of the ride-through are irrelevant.[8] There has been no claim by the Defendants that they were unaware of the discharge injunction in this case. Further, there has been no claim that the Defendants did not intend the actions that are alleged to have violated the discharge injunction. Thus, the Court must decide if the actions taken by the Defendants in this case violated the discharge injunction.

C.  Did Ford Act to Collect a Personal Liability of the Debtors?

The discharge afforded by Section 524 "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect,

---

[8]The parties briefed the issue of whether "ride through" has indeed been abolished by BAPCPA. However, as discussed below, the issue at hand is whether the discharge injunction has been violated, and its resolution does not require the Court to address the "ride through" issue.

recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). Liens, however, survive bankruptcy and remain enforceable against property unless they are avoidable under the Bankruptcy Code. See, e.g., Johnson v. Home State Bank, 501 U.S. 78, 84 (1991); In re Hamlett, 322 F.3d 342, 348 (4th Cir. 2003); In re Anderson, 348 B.R. 652, 655 (Bankr. D. Del. 2006)(citing Holloway v. John Hancock Mut. Life Ins. Co. (In re Holloway), 81 F.3d 1062, 1063 n.1 (11th Cir. 1996)). The facts as alleged by the Debtors in their Complaint do not suggest that the actions taken by the Defendants in this case, regardless of whether they may be permitted by North Carolina law, rise to the level of anything more than an in rem action against the Vehicle. Further, the fact that the attempted repossession and the communications leading up to it may have violated North Carolina law does not transform the Defendants' actions into in personam actions against the Debtors. See In re Anderson, 348 B.R. at 660-61 ("The only matter before this Court, however, is the Creditor's alleged violation of the discharge injunction. The Court concludes that the Creditor's breach of the peace in the conduct of an otherwise rightful repossession did not violate the discharge injunction because it did not transform the *in rem* action against the Vehicle into an *in personam* action against the Debtors. If the Debtors wish to pursue their state-law remedies against the Creditor, they may do so in state court."). Enforcing a lien against property of a debtor through repossession pursuant to state law is not an attempt to enforce a debtor's personal liability. Id. at 655 ("Self-help repossession of property is an *in rem* action that would not appear to implicate the discharge injunction.").[9]

---

[9] See also Chandler Bank of Lyons v. Ray, 804 F.2d 577, 579 (10th Cir. 1987)("Thus, the injunction on discharge under § 524 of the Code does not preclude *in rem* actions by secured creditors."); Hoseman v. Weinschneider, 277 B.R. 894, 902 (N.D. Ill. 2002), aff'd, 322 F.3d 468 (7th

The Debtors' complaint does not allege that Ford demanded payment or took any other action to recover the difference in value between the Vehicle and the debt that Ford could have recovered but for the discharge. There were simply no allegations in the Complaint that Ford took any action to enforce the personal liability of the Debtors. As the Anderson court concluded, where a creditor's actions are limited to in rem actions, there can be no violation of the discharge injunction. Id. at 655.

The Debtors argue that, if there was no default under the Contract, then the attempted repossession then becomes an in personam action and a violation of the discharge injunction is possible. As noted above, this argument must fail because even a wrongful repossession would not constitute grounds for finding a secured creditor in contempt for violating the discharge injunction. A wrongful repossession would not be "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a

---

Cir. 2003)(affirming the bankruptcy court's holding that the discharge injunction will not prohibit the enforcement of valid liens); In re Evans, 289 B.R. 813 (Bankr. E.D. Va. 2002)(court found that automobile lessor had violated the discharge injunction because its otherwise valid right to a replevin action against the property was vitiated by the fact that the debtor no longer had possession of the car); In re James, 285 B.R. 114 (Bankr. W.D.N.Y. 2002)(court concludes that creditor violated the discharge injunction by post-discharge repossession of debtor's vehicle specifically because creditor's lien had been satisfied and the repossession could no longer be classified as an act of lien enforcement); In re Walker, 180 B.R. 834, 841 (Bankr. W.D. La. 1995)("The case law plainly establishes that a secured creditor 'with a loan secured by a lien on the assets of a debtor . . . [may] ignore the bankruptcy proceeding and look to the lien for satisfaction of the debt. Thus, any lien not invalidated or avoided survives the debtor's discharge.")(brackets in original)(quoting In re Simmons, 765 F.2d 547, 556 (5th Cir. 1985)); In re Davis, 99 B.R. 732, 733 (Bankr. W.D. La. 1989)(Section "524(a) does not apply to post-discharge enforcement of a valid pre-bankruptcy lien not avoided under the Bankruptcy Code."); Hagemann v. Chemical Mtg. Co. (In re Hagemann), 86 B.R. 125, 127 (Bankr. N.D. Ohio 1988)("Section 524 is designed to protect a Debtor from in personam liability but does not protect a Debtor from in rem liability on an unavoided, valid lien.")(citation omitted); In re Nason, 22 B.R. 690, 691 (Bankr. Me. 1982)("Nothing indicates that Congress intended the discharge injunction to apply to the enforcement of valid liens.").

personal liability of the debtor." 11 U.S.C. § 524(a)(2) (emphasis added); see In re Champagne, 145 B.R. 122, 124 (Bankr. D.R.I. 1992)("The issue whether the repossession is conducted maliciously or unreasonably is a state law question, and is not cognizable in the Bankruptcy Court as a violation of the discharge injunction."); In re Garske, 286 B.R. 773 (Bankr. N.D. Cal. 2002) (holding that threats of repossession made during post-discharge telephone calls from secured creditor to debtor were not attempts to collect on debtor's personal liability and, therefore, did not violate the discharge injunction). If a creditor attempts to repossess collateral that it is not entitled to repossess pursuant to the terms of a contract, the debtor may very well have a cause of action against the creditor under state law. However, such action on the part of a creditor, although reprehensible, is not an in personam action against the debtor so as to constitute a violation of Section 524.

E. The State Law Claims of the Debtors

In addition to the discharge violation claim, the Debtors asserted several state law causes of action in their complaint. Because the Court has concluded that the Debtors' discharge violation claim must be dismissed, the state law claims must be dismissed for lack of subject matter jurisdiction. Pursuant to 11 U.S.C. § 1334(b), bankruptcy courts have jurisdiction over three types of civil proceedings: those that "arise under," those that "arise in," and those that are "related to" a bankruptcy case. In re Poplar Run Five Ltd. P'ship, 192 B.R. 848, 855 (Bankr. E.D. Va. 2005). Proceedings that "arise under" or "arise in" a bankruptcy case are core proceedings in which a bankruptcy court can issue dispositive orders. Id. Proceedings that are merely "related to" a bankruptcy case are non-core proceedings in which the bankruptcy court may not enter a final judgment. In re Walker, 51 F.3d 562, 569-70 (5th Cir. 1995).

A proceeding will "arise under" Title 11 if it "involve[s] a cause of action created or determined by a statutory provision of Title 11." In re Wood, 825 F.2d 90, 96 (5th Cir. 1987)(citing 1 Collier on Bankruptcy ¶ 3.01 at 3-23 (1987)).  A proceeding "arising in" Title 11 is one that is "not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." In re A.H. Robbins, 86 F.3d 364, 372 (4th Cir. 1996) (quoting In re Wood, 825 F.2d at 97).  The state law claims of the Debtors neither "arise under," nor "arise in" their bankruptcy case, and thus are not core proceedings.  Therefore, the Court must examine whether the claims are "related to" this bankruptcy case.

In making this determination, most circuits have adopted the test articulated by the Third Circuit in Pacor v. Higgins, which held that a proceeding is "related to" the bankruptcy when:

> The outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.  . . .  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impact upon the handling and administration of the bankrupt estate.

Pacor v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984), overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995).  "The Fourth Circuit joins the First, Third, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits and follows the test set forth in" Pacor. In re Griffin Services, Inc., No. B-01-52373C-7W, 2002 WL 31051042, at *2 (Bankr. M.D.N.C. Aug. 29, 2002).  Because the claims brought by the Debtors concern actions by Defendants that occurred after the discharge had been entered and the bankruptcy case had been closed, the Court is unable to find that the "outcome of [those] proceedings[s] could conceivably have any effect on the" Debtors' bankruptcy estate.  Pacor, 743 F.2d at 994.  Therefore, the Court lacks subject matter jurisdiction to adjudicate such state law claims, and they must be dismissed on that

16

ground.[10]

## IV. CONCLUSION

A contempt action is the proper remedy for a violation of the discharge injunction afforded by Section 524(a). The Defendants would be in contempt of court if they knew about the Discharge Order and took action that violated the discharge injunction. However, while the Defendants certainly knew of the Discharge Order, their actions, as alleged in the Debtors' complaint, did not violate the discharge injunction. Such actions constitute <u>in rem</u> actions against the Vehicle, and the fact that the Defendants may have violated North Carolina law in attempting to repossess the Vehicle does not make them <u>in personam</u> actions against the Debtors. Thus, there was no violation of the discharge injunction, and the Debtors' compliant must be dismissed for failure to state a claim upon which relief may be granted. Because the Debtors' remaining claims are not related to the Debtors' bankruptcy, the Court has no jurisdiction to decide them. If the Debtors wish to pursue such claims, then they may do so in state court.[11]

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

---

[10] The Court makes no finding or ruling concerning the merit of the Debtors' state law claims.

[11] Ford alleges that it has a right to arbitrate all matters arising from the Contract pursuant to an arbitration clause in the contract. Because this Court is dismissing all of the Debtors' causes of action, the Court need not address this argument.

## **PARTIES IN INTEREST**

Michael D. West

Thomas C. Flippin

Martha R. Sacrinty

Rita G. Almond

Timothy Michael Almond